UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL JAMES DORITY,

                Plaintiff,

v.                                                 7:14-CV-0285
                                                 (GTS/WBC)
COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

CONBOY, McKAY LAW FIRM              LAWRENCE HASSELER, ESQ.
  Counsel for Plaintiff
ADDRESS

U.S. SOCIAL SECURITY ADMIN.          KAREN CALLAHAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 14.) This case has proceeded in accordance with General Order 18.

      Currently before the Court is this Social Security action filed by Michael J. Dority ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have filed cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set

forth below, it is recommended that Plaintiff's motion is denied and Defendant's motion is granted.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born on April 1, 1991. (T. 98.) He completed the 10th grade. (T. 127.) Generally, Plaintiff's alleged disability consists of sleep terror disorder, schizophrenia, and severe depression. (T. 126.) His alleged disability onset date is August 1, 2008. (T. 98.) His date last insured is December 31, 2010. (T. 122.) He has no prior work experience. (T. 127.)

    B.     **Procedural History**

On November 17, 2010, Plaintiff applied for Child's Insurance Benefits under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 98.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 27, 2012, Plaintiff failed to appear before ALJ, Elizabeth W. Koennecke; however, Plaintiff's attorney was present and ALJ Koennecke proceeded with the hearing. (T. 22-26.) On August 2, 2012, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 6-21.) On February 4, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-18.) First, the ALJ found that Plaintiff met the child status

2

requirements through March 31, 2009 (Plaintiff had not attained age 22 as of that date) and Plaintiff had not engaged in substantial gainful activity since March 31, 2009. (T. 12.) Second, the ALJ found that Plaintiff had the severe impairments of anxiety disorder and substance abuse disorder. (T. 12.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. (T. 14.) The ALJ found that Plaintiff had the additional non-exertional limitations: Plaintiff could frequently understand, carry out and remember simple instructions; he could frequently respond appropriately to supervision, coworkers and usual work situations; and he could frequently deal with changes in a routine work setting. (*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work and there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 17.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ erroneously determined that Plaintiff constructively waived his right to appear at the hearing. (Dkt. No. 12 at 6-8 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ erroneously failed to fully develop the record and failed to properly assess Plaintiff's RFC. (*Id.* at 8-10.)

## B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly determined that Plaintiff waived his right to testify at the hearing. (Dkt. No. 13 at 5-10 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ appropriately developed Plaintiff's medical record and properly assessed Plaintiff's RFC. (*Id.* at 10-17.) Third, Defendant argues the ALJ appropriately relied on the framework of the Medical-Vocational Rule 204.00 at step five. (*Id.* at 17-20.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Determined that Plaintiff Waived His Right to Testify at the Hearing.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 5-10 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff failed to appear for his scheduled hearing on June 27, 2012; however, Plaintiff's attorney was present. (T. 24.) Plaintiff's attorney indicated that she had recently spoken to Plaintiff and he gave her no indication that he was not able to attend the hearing. (*Id.*) The ALJ informed counsel that she would issue a notice to show cause. (*Id.*) The ALJ then proceeded with the hearing and reviewed the record with counsel ensuring it was complete. (T. 24-25.) A notice to show cause was issued and mailed to Plaintiff on June 27, 2012. (T. 90.) On July 5, 2010 the Office of Disability Adjudication and Review ("ODAR") received Plaintiff's response to the show cause notice. (T. 96.) Plaintiff responded that he did not appear at the hearing because he

6

"has a very hard time answering questions," suffers from a panic disorder, and he "did not think [he] was going to make it through the hearing." (*Id.*) On August 2, 2012 the ALJ issued a written decision finding Plaintiff not disabled. The ALJ concluded in her decision that Plaintiff failed to provide good cause to support his failure to appear and therefore he waived his right to testify. (T. 9.)

When a plaintiff fails to appear at a hearing, but his representative is present, an ALJ may not dismiss the hearing. HALLEX: Hearings, Appeals and Litigation Manual I-2-4-25(D)(2)(b). Instead, the ALJ will issue a request to show cause after which the ALJ will either 1) determine that the plaintiff constructively waived his right to appear and issue a decision (plaintiff fails to respond to notice or fails to show good cause) or 2) offer the plaintiff a supplemental hearing to provide testimony if the plaintiff establishes good cause for failure to appear. *Id.*[1] In determining "good cause" for failure to appear at a hearing, the ALJ must take into account any physical, mental, educational, or linguistic limitations plaintiff may have. *See* 20 C.F.R. §§ 404.911, 416.1411.

As an initial matter, both parties cite to the HALLEX in support of their arguments. The HALLEX is a manual that provides the Social Security Administration with a set of guidelines and procedures. The Second Circuit has not yet determined whether or not HALLEX policies are binding; however, other Circuits and district courts within the Second Circuit have found that "HALLEX policies are not regulations and therefore not deserving of controlling weight." *Edwards v. Astrue*, No. 10-CV-1017, 2011 WL 3490024, at *6 (D. Conn. Aug. 10, 2011); *See, e.g., Schweiker v. Hansen*, 450

---

[1] An ALJ may also determine that a plaintiff has constructively waived his right to appear if the representative is unable to locate the plaintiff, if the notice of hearing was mailed to plaintiff's last known address, and the contact procedures under 20 C.F.R. §§ 404.938 and 416.1438 were followed. HALLEX I-2-4-25(D)(2)(a). However, here, Plaintiff's representative made no indication that she was unable to locate Plaintiff. (T. 24.)

7

U.S. 785, 789, 101 S. Ct. 1468, 1471, 67 L. Ed. 2d 685 (1981) (finding that HALLEX is not a regulation, has no legal force, and it does not bind the SSA, but it is a 13-volume handbook for internal use by thousands of SSA employees); *Bunnell v. Barnhart,* 336 F.3d 1112, 1115 (9th Cir. 2003) (holding HALLEX has no legal force and is not binding); *Martinez v. Astrue,* No. 07-CV-0699, 2009 WL 840661, at *2 n. 1 (D.Conn. Mar. 30, 2009); *Doherty v. Astrue*, No. 07-CV-954, 2009 WL 1605360, at *8 (N.D.N.Y. June 5, 2009). Courts have held; however, that "[a]n administrative agency is required to follow its own internal policies when they accord with or are more demanding than the statute or its regulations." *Edwards*, 2011 WL 3490024, at *6; *See Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir.2000) (finding that, despite not being binding, the Social Security Administration should follow HALLEX policies when individual rights are affected, even when the policies are more "rigorous than would otherwise be required"); *McCoy v. Barnhart,* 309 F.Supp.2d 1281, 1284 (D. Kansas 2004) (noting that when "the HALLEX simply restates an administrative regulation, it is enforceable"). However, where HALLEX policies authorize procedures not addressed in the regulations or statute, they do not have the force of law. *See McCoy,* 309 F.Supp.2d at 1284.

Although not binding, the HALLEX provides a helpful guideline in determining the proper procedure when a plaintiff fails to appear at a hearing but a representative is present, as in this case. Further, the true crux of the issue lies in whether or not Plaintiff asserted "good cause" for failure to appear at the hearing as governed under 20 C.F.R. §§ 404.911 and 416.1411.

Plaintiff argues the ALJ erred in her determination that Plaintiff's mental impairment did not establish "good cause" for failure to appear at the hearing. (Dkt. No.

12 at 7-8 [Pl.'s Mem. of Law].) Plaintiff essentially argues that his severe mental impairment alone is enough to establish "good cause" for failure to attend his hearing. (*Id.*) Although an ALJ must take into consideration a plaintiff's mental limitation in determining "good cause," evidence that a plaintiff suffers from a mental impairment, or even that the impairment is considered severe, does not in and of itself, generate "good cause" for failure to attend a hearing. Further, as Defendant argues, the ALJ properly considered Plaintiff's mental impairment in assessing "good cause" and evidence in the record supported the ALJ's determination that Plaintiff's mental impairment did not constitute "good cause" for failure to appear at the hearing. (Dkt .No. 13 at 9 [Def.'s Mem. of Law].) To be sure, the ALJ "ultimately has discretion over the conduct of the hearings." *Schmidtmann v. Comm'r of Soc. Sec.,* No. 13-CV-1415, 2015 WL 1285776, at *15 (N.D.N.Y. Mar. 20, 2015), *see Carpenter v. Colvin,* No. 13-CV-859, 2014 WL 4637085, at *2 (N.D.N.Y. Sept. 16, 2014).

The ALJ acknowledged in her decision that Plaintiff alleged his mental impairment prevented him from attending the hearing, but she ultimately concluded this did not constitute "good cause" because the record failed to support this excuse. (T. 9.) Specifically, Plaintiff stated he feared he would have a hard time answering questions (T. 96); however, the ALJ found this allegation unsupported, because Plaintiff was able to present to his treating psychiatrist without issue (T. 9). The ALJ's determination was supported elsewhere in the record as well. For example, during a telephone conversation with the Social Security Administration to complete his Disability Report, the representative noted Plaintiff was "very cooperative." (T. 123.) Plaintiff also presented, without problem, for a consultative examination in relation to his application

9

for disability benefits. (T. 178-179.) The exam notations indicated that Plaintiff was able to provide a social and medical history, he was alert, his mood was neutral and his affect was appropriate. (*Id.*) The ALJ did not err in her conclusion that Plaintiff's mental impairment did not constitute "good cause," because substantial evidence in the record indicated that Plaintiff was able to present to other unknown places and people and was able to answer questions without issue.

Plaintiff's medical record from his treating source did not support a conclusion that his mental impairments would prevent him from attending a hearing. Plaintiff constantly presented well at his appointments and notations indicated that he had normal mental status examinations. (T. 204, 206, 208, 209, 219, 220, 221, 222, 226.) Records also indicated that Plaintiff was doing well despite being under stress, and that his anxiety was under control. (T. 205, 207, 208.) The record contained notations from Plaintiff's treating sources which urged him to discontinue his use of marijuana as it related to his symptoms; however, it appears from the record that Plaintiff continued to use marijuana. (T. 206.) Plaintiff worked with Vocational and Educational Services for Individuals with Disabilities ("VESID") at one point, but the record stated that he was "not interested" in finding a job. (T. 216.) Again, substantial evidence in the record supported the ALJ's determination that Plaintiff's mental impairment did not provide "good cause" for his failure to attend the hearing.

**B.    Whether the ALJ Appropriately Developed the Record.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 10-17 [Def.'s Mem. of Law].) The Court adds the following analysis.

The ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d). Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05-CV-2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)). However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. Where the source's opinion includes all of the factors set forth in 20 C.F.R. §§ 404.1513, 416.913[1] and there is no indication that further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009). Further, reviewing courts hold that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

Plaintiff asserts that the ALJ failed to develop the record because she did not re-contact Plaintiff's treating source to request a medical source statement outlining Plaintiff's functional limitations. (Dkt. No. 12 at 9 [Pl.'s Mem. of Law].) Plaintiff's treating source noted in a progress report that there was a "disability work form" that "needed to

---

[1] Pursuant to 20 C.F.R. §§ 404.1513(b), 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

11

[be] filled out." (T. 219.)  At the hearing the ALJ specifically referred to this notation in the record and asked Plaintiff's counsel if the form had been completed. (T. 25.) Counsel indicated that she requested the medical source statement form from Plaintiff's treating source, but he informed her he would not complete the form. (*Id.*)

First, "the lack of the medical source statement will not make the report incomplete." 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6). Second, there were no obvious gaps in the record which would trigger an ALJ's duty to develop it further. The record contained a consultative examination and treatment records from Plaintiff's treating mental health providers. Plaintiff did not indicate that he received treatment for any other impairments, nor does the record indicate that he received treatment elsewhere. Therefore, because the treating source clearly indicated that he would not complete a medical source statement, the ALJ did not have a duty to re-contact him for such and because the record was complete without any obvious gaps the ALJ did not err in failing to develop the record further.

Plaintiff appears to further argue that absent a medical source statement from a treating source, the ALJ could not properly assess Plaintiff's RFC because the record failed to provide any functional limitations which the ALJ could rely on in making her RFC determination. Therefore, continues the argument, the ALJ's RFC determination was not supported by substantial evidence. (Dkt. No. 12 at 9 [Pl.'s Mem. of Law].) However, as Defendant asserts, the ALJ properly relied on the consultative report of Richard Williams, Ph.D. and the State agency medical physician R. Petro, M.D. in making her RFC determination. (Dkt. No. 13 at 15-17 [Def.'s Mem. of Law].) An ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency

12

medical consultants." *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010). Dr. Petro completed a mental RFC assessment form based on the medical records in the file; therefore, Plaintiff's argument that the ALJ's RFC assessment was not supported by the record because there were no records with specific functional limitations, is without merit. The ALJ appropriately weighed the opinion evidence of the record and her RFC determination was supported by substantial evidence.

Plaintiff also provides a cursory argument that the ALJ erred in her credibility assessment because she failed to provide Plaintiff with the opportunity to testify at a hearing. (Dkt. No. 12 at 9 [Pl.'s Mem. of Law].) As discussed in Part IV.A., the ALJ properly concluded that the Plaintiff did not provide "good cause" for failing to attend his hearing. Therefore, the ALJ's determination that Plaintiff waived his right to testify did not cause her credibility assessment to be flawed.

Defendant also asserts that the ALJ's determination at step five was not proper. (Dkt. No. 13 at 17-18 [Def.'s Mem. of Law].) Plaintiff provided only a conclusory statement that the ALJ failed to meet her burden to show that there were substantial number of jobs that exist in the national economy which Plaintiff could perform. (Dkt. No. 12 at 9 [Pl.'s Mem. of Law].) Plaintiff failed to provide any support for his argument. For the reasons outlined in Defendant's brief, this Court concludes that the ALJ appropriately applied Medical Vocational Rule 204.00 in making her step five determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 15, 2015

_____
William B. Mitchell Carter
U.S. Magistrate Judge